PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MCGOWAN, *et al.*, | CASE NO. 1:10-CV-01302 |
| Debtors-Appellants, | |
| | JUDGE BENITA Y. PEARSON |
| v. | |
| DANIEL M. MCDERMOTT, United States Trustee | **MEMORANDUM OF OPINION** |
| Appellee. | **AND ORDER** |

Before the Court is an appeal of the Bankruptcy Court's final order dismissing Joseph McGowan and Laura Kuhn McGowan's ("Debtors" or "Appellants") voluntary Chapter 7 petition pursuant to 11 U.S.C. § 707(b)(3).[1] ECF No. 9. For the reasons below, the Court affirms the Bankruptcy Court's dismissal of Appellants' petition.

**I. Standard of Review**

A bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A bankruptcy court's decisions "are reviewed for an abuse of discretion." *Id*.

**II. Procedural and Factual Background**

Appellants Joseph Thomas McGowan and Laura Kuhn McGowan, a married couple, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code seeking a discharge on their unsecured debts. ECF Nos. 9 at 4; 11 at 2-3. At the time of filing, the debtors had three

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

(1:10-CV-01302)

children ages seventeen, nineteen, and twenty-one, as well as a golden retriever. ECF No. 9 at 5, 7. Appellants both maintain full-time employment and earn a total gross annual income of $131,360.00. ECF No. 1-2 at 1-2. Joseph McGowan is a business development manager for Comfort Systems, USA and earns a gross income of $7,280.00 a month. ECF No. 1-2 at 1. Laura Kuhn McGowan is a an administrator for St. Ignatius High School and earns a gross income of $3,660.67 a month. ECF No. 1-2 at 1. The record reflects that Appellants scheduled debts total $780,544.75, including a first mortgage for $510,289.00, and a second mortgage for $31,966.00. ECF No. 11 at 14-15.

The United States Trustee moved to dismiss the McGowans' case asserting that the case was abusive pursuant 11 U.S.C. § 707(b)(1) and (b)(3)(B) because the McGowans' income exceeded the median income for the State of Ohio and a number of scheduled expenses were excessive or impermissible.[2] ECF No. 11 at 38. The McGowans timely objected to the motion. ECF No. 9.

The Bankruptcy Court held an evidentiary hearing and at the close of the United States Trustee's case, the McGowans orally moved for summary judgment in their favor arguing they had "passed" the means test provisions of § 707(b)(2), precluding dismissal under § 707(b)(3)(B). ECF No. 11 at 3. While finding no evidence that the McGowans had engaged in bad faith or other dishonest conduct, the Bankruptcy Court denied the McGowans' motion and

---

[2] A court determines whether abuse exists by first comparing the debtor's annualized "current monthly income" to the "median family income" of a similarly-sized family in the debtor's state of residence. ECF No. 11 at 11. A presumption of abuse does not arise if the debtor's current monthly income falls below the median. ECF No. 11 at 11.

(1:10-CV-01302)

granted the United States Trustee's motion to dismiss ruling that, "based on the totality of the circumstances of the Debtors' financial situation, it is hereby determined that granting Debtors relief under Chapter 7 would constitute abuse pursuant to § 707(b)(3)." ECF No. 1-2 at 10. The Bankruptcy Court's decision was primarily based upon the following four findings: (1) Debtors have the ability to pay back some of their unsecured debt; (2) Debtors may not pay their adult children's college expenses and tuition at the expense of unsecured creditors; (3) Debtors may not pay their adult children's student loan creditors at the expense of unsecured creditors who face discharge; and (4) Debtors' mortgage payment listed on both the original Schedule J and the amended Schedule J submitted on the eve of the evidentiary hearing are "more than double the housing allowance listed in the IRS National Standards for a family size of five in Cuyahoga County."[3] ECF No. 1-2 at 9.

On May 17, 2010, the McGowans filed a notice of appeal with an election to have this appeal considered by the District Court. ECF No. 1.

## III. Analysis

**A. Standard of Law**

### 1. Statutory Standard

A bankruptcy court may dismiss a Chapter 7 petition under 11 U.S.C. § 707(b)(1) and (b)(3) based on an abuse of Chapter 7. Section § 707(b)(1) provides in pertinent part:

After notice and a hearing, the court, on its own motion or on a motion by the

---

[3] The Bankruptcy Court remarked that Mr. McGowan testified "that he had not made a payment on the mortgage since at least September 2009, and did not explain why the higher mortgage payment was substituted [on the amended Schedule J]. ECF 1-2 at 9.

(1:10-CV-01302)

> United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

The following section, § 707(b)(2), creates a formula for means testing that creates a rebuttable presumption of abuse. The United States Trustee did not assert that the Debtors' petition was presumptively abusive, and, accordingly, did not seek dismissal under § 707(b)(2).

Section 707(b)(3), however, provides that the Court may determine a petition to be abusive absent a presumption of abuse, as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph *does not arise or is rebutted*, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; *or*
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) (emphasis added).  The Bankruptcy Court relied upon § 707(b)(3) in dismissing the Debtors' petition.

### 2. Case Law Standard

The Supreme Court recently reiterated that "Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system . . . [and] adopted the means test . . . to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716, 721 (2011) (emphasis in original).  The Supreme Court described the means test under § 707(b)(2) as a

-4-

(1:10-CV-01302)

"screening mechanism," and interpreted the "means test to measure debtors' disposable income [to] 'ensure that [they] repay creditors the maximum they can afford.'" *Id*. at 721 n.1, 725.

*In re Krohn* is the Sixth Circuit's leading case for interpreting whether a petition is an abuse under § 707(b)(3).[4] *In re Krohn*, 886 F.2d 123 (6th Cir. 1989). The Sixth Circuit analyzed the provision of § 707(b) which permitted the bankruptcy court to dismiss a petition as a substantial abuse of Chapter 7. *Id*. That court also noted that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need."[5] *Id*. at 126. "Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." *Id*. (citing *In re Walton*, 866 F.2d 981, 984-85 (8th Cir. 1989)). The Sixth Circuit stated that the want of need "factor alone may be sufficient to warrant dismissal." *In re Krohn*, 886 F.2d at 126.

---

[4] *In re Krohn* was decided prior the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The courts in the Sixth Circuit, however, still apply the analysis in *In re Krohn*. See *In re Harries*, 2009 WL 1394261 (Bankr. N.D. Ohio 2009) ("*Krohn* and *Behlke* are still good law, at least to the extent that facts constituting 'substantial abuse' . . . based on a debtor's 'want of need' would also constitute 'abuse' under the 'totality of the circumstances' of 11 U.S.C. § 707(b)(3)(B).").

[5] The Bankruptcy Court explained:

> Historically, courts treated the pre-BAPCPA presumption in favor of granting the relief requested by the debtor as a 'caution and reminder' for the court to 'give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.' *In re Kelly*, 841 F .2d 908, 917 (9th Cir.1988); *see also In re Krohn*, 886 F.2d 123 (6th Cir. 1989). BAPCPA eliminated the substantial abuse standard utilized in determining if a debtor's case required dismissal and adopted a lower standard of abuse in considering a motion under § 707(b). *See* 11 U.S.C.§ 707(b)(3).

ECF No. 1-2 at 4-5.

(1:10-CV-01302)

### B. The Bankruptcy Court Properly Dismissed the Case Based upon the Totality of the Circumstances

Appellants allege that the Bankruptcy Court erred in dismissing their case pursuant to 11 U.S.C. § 707(b)(3) based solely upon abuse under the totality of the circumstances of the Debtors' financial situation, while the Debtors' case was not presumed abusive under the "means test" set forth in 11. U.S.C. § 707(b)(2). ECF No. 9 at 13-14.

In *Ransom*, the Supreme Court described the "means test" provided by 11 U.S.C. § 707(b)(2) as a "screening mechanism," rather than a dispositive determination. *Ransom*, 131 S. Ct. at 721. The United States Trustee correctly asserted that passing the "means test" does not preclude further review. ECF No. 11 at 24. The "means test" does not determine the outcome of Appellants' case, but rather only establishes whether a presumption of abuse does not arise or is rebutted. ECF No. 11 at 24. After determining whether a presumption of abuse does not arise or is rebutted, a court must proceed to the totality of a debtor's financial circumstances under § 707(b)(3)(B). ECF No. 13. The Bankruptcy Court did not err in proceeding to the second step and conducting an analysis of the totality of Appellants' financial circumstances under § 707(b)(3)(B).

Appellants argue that a dismissal based upon the totality of the financial circumstances under § 707(b)(3)(B) requires something more than an ability to repay. ECF No. 9. In response, the United States Trustee explains that the requirement of something more than an ability to repay is based on the minority view set forth in *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006). Under the Sixth Circuit's standard, a debtor's ability to pay can be the sole basis for a finding of abuse. *Krohn*, 886 F.2d at 126. The Sixth Circuit set forth other factors to consider

-6-

(1:10-CV-01302)

upon determining whether the totality of the circumstances warrant a dismissal of the debtor's case:

> Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn*, 886 F.2d at 126.

The Bankruptcy Court did not limit its analysis and determination to Appellants' ability to repay debts, but rather considered the totality of Appellants' financial situation as highlighted in the Bankruptcy Court's Memorandum of Opinion and Order:

> Among the monthly expenses objected to by the Trustee on Debtors' Schedule J were $2,450 for college tuition for two of the Debtors' children, $220 for college books, $626 for student loan repayment, and $433 for 401(k) loan repayment. (UST Exh. 2). A majority of courts holds that debtors may not pay college expenses on behalf of adult children at the expense of the debtors' unsecured creditors. *In re Baker*, 400 B.R. 594,598 (N.D. Ohio 2009). This Court has issued rulings consistent with the majority opinion, and has disallowed payment of college expenses for adult children absent a special circumstance. *Id.* Though it is admirable for Debtors' to attempt to pay their children's tuition, expenses related to their children's college tuition and books are improper in determining Debtors available disposable income.
>
> In addition to paying tuition and book expenses, Mr. McGowan testified that they contribute for meal plans and food expenses for their two children in college. (McGowan, J., Direct). The Court finds his testimony to be generally credible. The Debtors scheduled a monthly food expense of $1,129. (UST Exh. 9). Debtors provided an itemized food budget for the months of July through October, 2009. (Debtors' Exh. G). During the months of September and October, while their son and daughter are at school, $498 of that monthly food expense is devoted to food for their son and daughter. (Debtors' Exh. G). Debtors' food expense, which is in part supporting their two adult children, should be reduced by the amount apportioned for their adult children's expenses.

(1:10-CV-01302)

> Furthermore, it is well settled that debtors may not favor one unsecured creditor over another. Baker, 400 B.R. at 599. Student loans, while generally nondischargeable, may not be accorded priority treatment under the Bankruptcy Code. *Id*. at 600. It is therefore improper to allow debtors to pay their student loan creditors while providing no distribution to other general unsecured creditors who face debt discharge. *Id*. Debtors, likewise, may not include their student loan payment expense in calculating monthly disposable income.

ECF No. 1-2 at 8-9.

Having carefully reviewed the record, the applicable law, and the parties' briefs, and heard oral argument, the Court adopts the Bankruptcy Court's thorough and well-reasoned Memorandum of Opinion and Order as it correctly sets out the facts and citations to the relevant statutes and case law.

### IV. Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court dismissing Joseph McGowan and Laura Kuhn McGowan's Chapter 7 petition as an abuse under 11 U.S.C. § 707(b)(3) is affirmed.


IT IS SO ORDERED.


| March 4, 2011 | s/ *Benita Y. Pearson* |
|---|---|
| Date | United States District Judge |